UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KEVIN L. BROWNING,               )
                                 )
            Plaintiff,           )
                                 )
v.                               )          No. 2:20-CV-012-HBG
                                 )
ANDREW M. SAUL,                  )
Commissioner of Social Security, )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12].

Now before the Court is Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18]. Kevin L. Browning ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.      PROCEDURAL HISTORY

Plaintiff previously filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, on June 17, 2014. [Tr. 136–37]. Plaintiff's alleged onset date was March 7, 2014. [*Id.*]. After his claims were denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 104–05]. A hearing was held on January 12, 2017 before ALJ Keith Pilkey. [Tr. 29–46]. ALJ Pilkey denied Plaintiff's claim on April 10, 2017 [Tr. 15–23], and the Appeals Council denied Plaintiff's request for review on

October 5, 2016 [Tr. 1–6]. After Plaintiff commenced a civil action in this Court, Judge Clifton Corker issued an order remanding Plaintiff's claim to the Commissioner for further consideration on January 3, 2019. *See Browning v. Comm'r of Soc. Sec. Admin.*, No. 2:17-cv-195-MCLC (E.D. Tenn. Sept. 22, 2017) [Docs. 19–20]. Judge Corker remanded the case to determine the correct date on which Plaintiff was last insured, as well as for the ALJ to properly analyze the U.S. Department of Veterans Affairs ("VA") disability rating as required by SSR 06-03p. [*Id.*]. The Appeals Council remanded the case to the ALJ on March 25, 2019 for further proceedings consistent with the Court's order. [Tr. 1499].

Plaintiff submitted additional medical records, and a supplemental hearing was held on October 24, 2019. [Tr. 1430–51]. On November 13, 2019, ALJ Pilkey found that Plaintiff was not under a disability and was not entitled to disability insurance benefits. [Tr. 1409–29]. The Appeals Council did not assume jurisdiction and Plaintiff did not file exceptions to the decision with the Appeals Council. *See* 20 CFR §§ 404.983; 404.984. Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on January 22, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2016.
>
> 2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 7, 2014 through his date last insured of June 30, 2016 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease of the cervical and

2

lumbar spine, osteoarthritis, degenerative joint disease, right epicondylitis, and residuals of ganglion cyst removal left hand (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ladders, ropes, or scaffolds; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; frequent fingering; and occasional exposure to vibration and to hazards.

6. Through the date last insured, the claimant was capable of performing past relevant work as a sales agent. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 7, 2014, the alleged onset date, through June 30, 2016, the date last insured (20 CFR 404.1520(f)).

[Tr. 1414–23].

## III.  STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by

4

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§

5

404.1520(a)(4) and -(e), 416.920(a)(4), -(e).  An RFC is the most a claimant can do despite his limitations.  §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps.  *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five.  *Id.*  At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.   ANALYSIS

Plaintiff first claims that the ALJ erred by finding that his depression was not a severe impairment.  [Doc. 14 at 13].  Additionally, Plaintiff asserts that the ALJ failed to properly weigh the opinion evidence from the VA regarding his physical and mental limitations. [*Id.* at 11]. Plaintiff challenges the ALJ's assignment of some weight to the opinions of the nonexamining state agency physicians "when those opinions only considered [his] condition through an erroneous date last insured of June 30, 2014."  [*Id.* at 12].  Plaintiff claims that the ALJ failed to properly weigh his subjective allegations or properly analyze that his previous job at the VA was for a disabled veteran.  [*Id.* at 14].  Lastly, Plaintiff claims that the ALJ's finding that he could return to his past relevant work as a sales agent and insurance clerk is "not supported by substantial evidence as it does not include all of the uncontradicted impairments of the Plaintiff, particularly his difficulty in using his hands and emotional impairments."  [*Id.* at 13].

### A.   Plaintiff's Depression

Plaintiff contends that he was treated by the VA for depression for several years, and thus the ALJ's finding that his depression was a nonsevere impairment is not supported by substantial

6

evidence. Plaintiff notes that he was diagnosed as suffering from depression from the VA,[1] as well as that it was noted that "he had a long history of depression since his injury" while serving in the Army and that "being limited a[t] home increases depression." *[Id.* at 13]; *see* [Tr. 678]. Plaintiff correctly states that treatment records detail major depressive disorder, recurrent, moderate as an active problem on October 28, 2014. [Tr. 62]. Moreover, Plaintiff points to a February 9, 2016 treatment note indicating depression and that he was prescribed Venlafaxine. [Tr. 1866–67]. An April 15, 2016 treatment note states that a PHQ-2 screen was performed, which resulted in a score of three (a positive screen for depression). [Tr. 1855].

The Commissioner responds that "the fact that Plaintiff was diagnosed with and treated for depression does not automatically equate to limitations on his basic work activities." [Doc. 18 at 13]. The Commissioner maintains that substantial evidence supports the ALJ's finding that Plaintiff's medically determinable, but nonsevere, impairment of depression caused no more than mild limitations the four broad areas of mental functioning.

In the disability decision, the ALJ acknowledged that Plaintiff's medically determinable mental impairment of depression "did not cause more than minimal limitation in the claimant's ability to perform basis mental work activities and was therefore nonsevere," due to the fact that it caused no more than mild limitations in the four broad functional areas of mental functioning. [Tr. 1415]. The ALJ found that Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. [Tr. 1415–16].

---

[1] Although Plaintiff claims that he was diagnosed at the VA as suffering from depression as early as September 2014, Plaintiff's citation to the record (Tr. 579) refers to his consultation with a dietician on October 4, 2013.

In support, the ALJ found that Plaintiff "made numerous reports inconsistent with a finding of more than mild limitations in the four broad areas of psychological functioning." [Tr. 1416]. The ALJ noted that Plaintiff reported on February 12, 2014 that he was able to provide daily care for an autistic, nonverbal twenty-one-year old and a fourteen-year old who were not able to perform activities of daily living. [*Id.*]; *see* [Tr. 532]. Moreover, the ALJ found that in June 2013 and June 2014, Plaintiff reported drinking five-to-six alcoholic beverages more than three days per week, and raising six minor children—including fostering "mentally challenged" children—while his wife ran their taxi business. [Tr. 1416]; *see* [Tr. 511, 515, 591]. The ALJ also noted that Plaintiff reported going on vacation. [Tr. 511, 591].

Next, the ALJ reviewed that Plaintiff reported on June 26, 2013, that he "unilaterally stopped taking his mental health medications in 2012 and went an entire year without any psychotropic medication." [*Id.*]; *see* [Tr. 588]. The ALJ noted that Plaintiff reported a score of "1" on his PHQ-9 questionnaire assessment, which is interpreted as a negative screen for depression on July 26, 2013 [Tr. 595], as well as that PTSD screening was also negative in 2013 and 2014 [Tr. 595, 1389]. [Tr. 1416]. Moreover, the ALJ noted that Plaintiff "contemporaneously declined a referral for mental health services" on July 26, 2013 [Tr. 592], as well as that "[s]ince February 2014, the claimant has been conservatively managed with venlafaxine for depression, and he continued to decline therapy services and mental health consults between 2014 and 2016." [Tr. 1416]; *see* [Tr. 535, 1263, 1305, 1319, 1389]. The ALJ provided that "mental status examinations routinely revealed appropriate grooming, a polite/cooperative attitude, attentive concentration, normal memory, normal affect, stable mood, normal speech, logical thought processes, no perceptual disturbances, and a normal psychomotor activity. [Tr. 1416]; *see* [Tr. 535, 958, 1261, 1274, 1329]. Lastly, the ALJ detailed that Plaintiff continued to deny suicidal

8

ideas and reported a stable mood on December 29, 2016. [Tr. 1416]; *see* [Tr. 1814].

At step two, the ALJ is required to consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. §§ 404.1508; 416.920(a)(4)(ii); 404.1520(a)(4)(ii). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508; 416.908. Additionally, an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

To be found disabled, "the ALJ must find that the claimant has a severe impairment or impairments" at step two. *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985). An impairment, or combination of impairments, will be found severe if the impairment(s) "significantly limit[ ] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The step two determination is "a de minimis hurdle" in that "an impairment will be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Brown*, 880 F.2d 860, 862 (6th Cir. 1988) (citing *Farris*, 773 F.2d at 90).

However, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's depression was a nonsevere impairment. The ALJ acknowledged Plaintiff's diagnosis for depression, but found that it had been conservatively managed, as well as that Plaintiff declined therapy services and mental health services. Additionally, the ALJ found that more than mild limitations were inconsistent with Plaintiff's reported daily activities, such as his ability to raise

9

several minor children, including two who are mentally challenged. *See, e.g.*, *Church v. Saul*, No. 2:18-CV-36-HBG, 2019 WL 3070313, at *9 (E.D. Tenn. July 12, 2019) (finding substantial evidence supported the ALJ's finding that Plaintiff's depression was a nonsevere impairment where the ALJ noted that Plaintiff's treatment records demonstrated a history of depression aggravated by alcohol abuse, that Plaintiff's depressive symptoms were conservatively treated and well-managed with medication, and that Plaintiff's depression did not cause more than minimal limitations in the ability to perform basic mental work related activities); *Knox v. Colvin*, No. 2:16CV155-TFM, 2016 WL 6897791, at *4 (M.D. Ala. Nov. 22, 2016) (finding substantial evidence supported the Commissioner's finding that the claimant's anxiety and depression did not constitute severe mental impairments where the conditions were treated conservatively and the ALJ found that the claimant had only mild limitations in the paragraph B criteria). The Commissioner correctly states that "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it." *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (citing *Higgs*, 880 F.2d at 863).

Further, it is well settled that the ALJ's failure to identify some impairments as "severe" is harmless where the ALJ continues the disability determination and considers both severe and nonsevere impairments at subsequent steps of the sequential evaluation as required by the regulations. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) ("And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'") (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ

10

characterized any other alleged impairment as severe or not severe is of little consequence.").

In the RFC determination, the ALJ noted that he had considered the opinions of the state agency psychological consultants, including their opinion that Plaintiff had no more than mild psychological limitations in the paragraph B criteria, and afforded their opinions some weight. [Tr. 1420]. Therefore, the Court finds that any error in the ALJ's step two determination that Plaintiff's depression was nonsevere was harmless, as the ALJ properly considered Plaintiff's depression in the RFC determination. *See, e.g.*, *McGowan v. Astrue*, No. 1:12-CV-75, 2013 WL 693234, at *12 (E.D. Tenn. Feb. 8, 2013) ("As the ALJ found Plaintiff had at least one severe impairment and then considered his severe and nonsevere impairments in the subsequent steps, it became 'legally irrelevant' that his depression was determined to be nonsevere."), *report and recommendation adopted sub nom.*, *McGowan v. Comm'r of Soc. Sec.*, 2013 WL 696087 (E.D. Tenn. Feb. 26, 2013).

### B.    ALJ's Treatment of Medical Opinions

Plaintiff asserts that the ALJ improperly weighed the opinions from the VA providers and the nonexamining state agency physicians. In the disability decision, the ALJ first reviewed the February 4, 2014 opinion of Mark Clark, PA-C, who performed an in-person examination and completed a disability benefits questionnaire. [Tr. 1420]; *see* [Tr. 60–19, 919–45]. The ALJ noted that Mr. Clark found Plaintiff's ability to work "was not functionally impacted due to [his] cervical/lumbar degenerative nor his allegations of neuropathy." [Tr. 1420]. Specifically, the ALJ detailed that during the evaluation, Mr. Clark observed that Plaintiff had limited motion, reduced (4/5) strength in the upper and lower extremities, and reduced grip strength, "which is somewhat inconsistent with no limitations." [*Id.*]. Additionally, the ALJ noted that imaging studies confirmed some mild orthopedic findings and treatment with hydrocodone. [*Id.*]. However, the

11

ALJ then noted that Mr. Clark is not an acceptable medical source, "and his opinion addresses the claimant's functioning prior to the alleged onset date," therefore the opinion was accorded little weight. [*Id.*].[2]

Next, the ALJ reviewed the November 19, 2014 Compensation and Pension examination performed by Thomas Frantzen, PA-C. [*Id.*]; *see* [Tr. 627–56]. The ALJ detailed that Mr. Frantzen found that Plaintiff was limited to a reduced range of sedentary exertion or "administrative/clerical" work with postural restrictions, limited lifting/persistent pushing with the right arm or routinely torqueing the right elbow, that he could only work two hours per day with breaks every thirty minutes to stretch his back. [Tr. 1421]; *see* [Tr. 628, 639, 647]. Mr. Frantzen also opined that Plaintiff was "partially qualified for simple clerical work for two hours per day." [Tr. 1421]; *see* [Tr. 635].

The ALJ, however, afforded Mr. Frantzen's opinion little weight. [Tr. 1421]. First, the ALJ noted that Mr. Frantzen "observed the claimant with largely the same mild findings as Mr. Clark." [*Id.*]. Additionally, the ALJ found that Mr. Frantzen's opinion was "inconsistent with the numerous imaging studies reflecting no significant neural compromise and mild orthopedic findings and conservative treatment, including [Plaintiff's] declining spiral injections." [*Id.*]. Further, the ALJ noted that Mr. Frantzen found respiratory limitations "despite a PFT study confirming normal results." [*Id.*]; *see* [Tr. 655]. The ALJ also found that Mr. Frantzen's opinion was inconsistent with Plaintiff's report of performing yardwork in November 2014, as well as the "assessment of Arthur Belanger, M.D., a VA physician who evaluated the claimant's epicondylitis

---

[2] The ALJ further detailed that Mr. Clark evaluated Plaintiff in 2009, but this opinion was accorded no weight because it assessed Plaintiff's functioning outside of the scope of the relevant period. [Tr. 1421].

in 2019" and found that "it was 'extremely unlikely' that the claimant's right epicondylitis was caused by overuse . . . in overcompensating for the claimant's alleged difficulties with the left thumb." [Tr. 1421]; *see* [Tr. 1147]. Lastly, the ALJ noted that Mr. Frantzen was not an acceptable medical source. [Tr. 1421].

Third, the ALJ found that "[t]he opinion of the VA audiologist, Graham Wilde, Ph.D., is accorded little weight." [*Id.*]. The ALJ reviewed that Dr. Wilde found that Plaintiff had hearing loss that would affect his work, that Plaintiff had difficulty hearing speech in the presence of background noise, but that Plaintiff's tinnitus would not impact his work ability. [*Id.*]; *see* [Tr. 660, 1489]. However, the ALJ found that "this was based solely upon the claimant's subjective reports of [the] same, as a contemporaneous audiogram conducted by Dr. Wilde confirmed 'normal' hearing." [Tr. 1421]; *see* [Tr. 659–60]. Additionally, the ALJ stated that testing revealed 96% speech discrimination, bilaterally. [Tr. 1421]; *see* [Tr. 657].[3]

Lastly, the ALJ reviewed the opinions of the nonexamining state agency medical and psychological consultants and afforded them some weight. [Tr. 1420]. On October 3, 2014, at the initial stage of the agency's review, Joseph Curtsinger, M.D., reviewed the evidence of record and opined that Plaintiff's impairments were nonsevere. [Tr. 71]. Additionally, state agency reviewing psychologist, C. Warrant Thompson, Ph.D. found that Plaintiff's mental impairments were not severe. [Tr. 72].

At the reconsideration level of the agency's review, on March 27, 2015, state agency psychological consultant Jenaan Khaleeli, Psy.D., evaluated Plaintiff's mental impairments and found that they were not severe and noted that Plaintiff had not alleged any worsening of his

---

[3] Plaintiff does not challenge the ALJ's assignment of little weight to the disability rating issued by the VA, which was a basis of the Court's prior remand order.

depression on reconsideration, provided any updated mental health treatment, or provided any updated information about his activities of daily living. [Tr. 91]. Additionally, Larry McNeil, M.D., examined the evidence of record and noted that x-ray evidence revealed minimal evidence of osteoarthritic changes in Plaintiff's hands and right shoulder and no evidence of disc disease in Plaintiff's back. [Tr. 89].

In the disability decision, the ALJ noted that the state agency medical and psychological consultants opined that Plaintiff had no more than mild psychological limitations in the paragraph B criteria and no severe physical impairments. [Tr. 1420]. In addition, the ALJ found that they were acceptable medical sources and familiar with the disability evaluation process and its requirements, as well as that their opinions were generally consistent with evidence prior to 2014. [*Id.*]. However, the ALJ detailed that these physicians were not examining sources and "lacked the opportunity to review additional evidence submitted at the hearing level, which warrants physical restrictions," as well as "[m]ost notably," they "applied the incorrect date last insured" of June 30, 2014, "which precluded them from considering evidence after 2014." [*Id.*]. Therefore, the ALJ afforded only some weight to the opinions of the nonexamining state agency physicians.

Here, Plaintiff asserts that the opinions of Mr. Clark, Mr. Frantzen, and Dr. Wilde— opinions from VA medical providers—are "the only evidence in the record" regarding his limitations during the relevant period from the alleged onset date through the date last insured. [Doc. 14 at 11]. Plaintiff claims that the ALJ's analysis of the opinions of the VA medical officials did not comply with the requirements of Social Security Ruling 06-3p, as well as that "[t]here is simply no contradictory evidence from any examining, consulting, or reviewing physician after June 30, 2014, through June 30, 2016." [*Id.* at 12].

14

Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902.[4]   Social Security Ruling 06-03p governs the opinions of "not acceptable medical sources." 2006 WL 2329939, at *2 (Aug. 9, 2006).[5]   Evidence from those who are "not acceptable medical sources" or "other sources," including physician's assistants and audiologists, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *Id.*; *see* 20 C.F.R. § 404.1513(d) (noting that nurse practitioners, physician's assistants, and audiologists are considered "other sources").[6]

Therefore, as an "other source," Mr. Clark, Mr. Frantzen, and Dr. Wilde's opinions were not subject to any special degree of deference. *See, e.g.*, *Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016).   Interpreting Social Security Ruling 06-03p, the Sixth Circuit has found that "[o]pinions from non–medical sources who have seen the [Plaintiff] in their

---

[4] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017).  The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule. *Id.* As Plaintiff's application was filed before March 27, 2017, the previous regulations are applicable. *See id.* §§ 404.1527; 416.927.

[5] "SSR 06-03p was rescinded [as to claims filed on or after] March 27, 2017, *see* Notice of Rescission of Social Security Rulings, 82 Fed. Reg. 15263-01 (March 27, 2017), but was in effect at the time of the ALJ's decision, and as such, applies here." *Davis v. Comm'r of Soc. Sec.*, No. 1:16-CV-2446, 2018 WL 1377790, at *7 n.6 (N.D. Ohio Mar. 19, 2018).

[6] While physician's assistants and audiologists are now deemed acceptable medical sources, the Commissioner correctly states that this regulation is applicable only to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1502(a)(6), (8).

15

professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007).

The ALJ explicitly considered Mr. Clark and Mr. Frantzen's status as not acceptable medical sources and detailed how their opinions were inconsistent with the medical record and their own examination findings. [Tr. 1420–21]. Similarly, the ALJ reviewed how Dr. Wilde's opinion was inconsistent with the medical record. [Tr. 1421]. Ultimately, the ALJ was not required to assign controlling weight to these opinions, and the ALJ assessed how they were consistent with the medical record as a whole. The consistency of an opinion with other evidence in the record is one factor that may be considered in evaluating medical opinion evidence from an "other source." *See* SSR 06-03p, 2006 WL 2329939, at *4.

The ALJ had broad deference in his consideration of these opinions, as "[t]he opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248–49 (6th Cir. 2015) (internal citations omitted). Accordingly, the Court finds that the ALJ appropriately considered Mr. Clark, Mr. Frantzen, and Dr. Wilde's opinions and properly stated his reasons for assigning them little weight. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 550 (6th Cir. 2014) ("Thus, the ALJ properly considered the [therapist's] opinion as an 'other source' and explained her reasons for giving it 'little to no weight.'").[7]

---

[7] In his Memorandum [Doc. 14], Plaintiff merely broadly summarizes the medical record as a whole, and then subsequently argues that the ALJ improperly reviewed Mr. Clark, Mr. Frantzen, and Dr. Wilde's opinions. However, without a specific argument, the Court is not required to examine the entire record and determine which pieces of medical evidence are allegedly

16

Plaintiff also challenges the ALJ's assignment of some weight to the opinions of the nonexamining state agency physicians, "when those opinions only considered the Plaintiff's condition through an erroneous date last insured of June 30, 2014." [Doc. 14 at 12].

The parties do not dispute that the nonexamining state agency consultants relied upon an improper date last insured. However, in an analogous situation, "an ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). In *Spicer*, the Sixth Circuit found that the ALJ had satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.* Similarly, in order for an ALJ to provide "'some indication' that he 'at least considered' that the source did not review the entire record . . . the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakley*, 581 F.3d at 409).

Here, the ALJ specifically detailed that the nonexamining state agency consultants "applied the incorrect date last insured, which precluded them from considering evidence after 2014." [Tr. 1420]. However, the ALJ's decision reflects that he made an independent determination based on all the medical evidence and that his analysis spanned the entire record. *See Gibbens v. Comm'r*

---

contradictory with the ALJ's treatment of these opinions. Moreover, upon the Court's review, it finds that the ALJ's finding that these opinions are inconsistent with the medical record is supported by substantial evidence.

17

*of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Moreover, Plaintiff fails to specifically challenge the ALJ's finding that Mr. Clark, Mr. Frantzen, and Dr. Wilde's opinions were inconsistent with the medical record or point to any evidence which he alleges the ALJ did not consider.

While the ALJ's RFC determination must be supported by substantial evidence, it is not necessary that this determination be consistent with an RFC offered by a particular physician. *See Mokbel-Aljahmi v. Commissioner of Social Security*, 732 F. App'x 395, 401 (6th Cir. 2018) (stating the Sixth Circuit has "rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ"). However, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm'r of Soc. Sec.*, No. 1:07-cv-51, 2008 WL 1733181, at *13 (S.D. Ohio Apr. 14, 2008); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinions for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding."). Further, "[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms." *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008).

18

While *Deskin* has been widely criticized as being overly broad, it has been interpreted to detail that "[s]uch general rule 'applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence.'" *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435, at *3 (S.D. Ohio July 29, 2019) (quoting *Kizys v. Comm'r of Soc. Sec.,* 3:10-CV-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011)).

In the present case, the Court finds that the ALJ appropriately reviewed all opinions of record and detailed how Mr. Clark, Mr. Frantzen, and Dr. Wilde's opinions were inconsistent with the medical record. Moreover, the ALJ acknowledged that while the opinions of the nonexamining state agency consultants were generally consistent with the medical record, they did not consider evidence after 2014. The ALJ thoroughly evaluated the medical record when determining the RFC, and substantial evidence supports the ALJ's conclusions." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018) (rejecting the argument that "once the ALJ decided to give no weight to the physicians' opinions regarding his ability to work, the ALJ was required to get the opinion of another physician before setting the residual functional capacity"); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached."). Therefore, the Court finds that the ALJ appropriately reviewed the medical opinions of record, and Plaintiff's allegations of error do not constitute a basis for remand.

### C.    Plaintiff's Subjective Allegations

Plaintiff asserts that the ALJ failed to properly weigh his subjective allegations, as Plaintiff

19

specifically challenges the ALJ's finding that the totality of the medical evidence was inconsistent with his allegations of disabling pain, fatigue, and radiculopathy. [Doc. 14 at 14]. Plaintiff submits that he was not required to establish the severity of his disabling pain by objective evidence, and that he "clearly suffers from very severe back, neck and arm difficulties." [*Id.*]. The Commissioner responds that the ALJ "properly identified the inconsistencies in the record that undermined Plaintiff's disability claim, including the objective medical evidence, Plaintiff's minimal and conservative treatment (including declining additional treatment), Plaintiff's improvement with treatment, and Plaintiff's reported daily activities." [Doc. 18 at 21].

In the disability decision, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and other limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 1418].

The ALJ's decision postdates Social Security Ruling 16-3p, which eliminates the use of the term "credibility" from the applicable policy regulation and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." 2016 WL 1119029, at *1 (Mar. 16, 2016)[8]; *see also Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017) (noting that under SSR 16-3p, "an ALJ must focus on the consistency of an individual's statements about the intensity, persistence and limiting effects of

---

[8] At the time Plaintiff filed his original claim for disability benefits, SSR 96-7p governed the Commissioner's analysis of a claimant's subjective complaints. On March 28, 2016, however, SSR 16-3p expressly superseded Ruling 96-7p. In 2017, the SSA clarified that it would apply SSR 16-3p "when [its adjudicators] make determinations and decisions on or after March 28, 2016." SSR 16-3p, 2017 WL 5180304, *13 n.27 (Oct. 25, 2017). *See, e.g.*, *Putnam v. Berryhill*, No. 17-CV-01821-CMA, 2018 WL 3429201, at *7 (D. Colo. July 16, 2018), *aff'd sub nom., Putnam v. Comm'r, SSA*, 789 F. App'x 694 (10th Cir. 2019).

20

symptoms, rather than credibility"), *report and recommendation adopted by*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). However, "[t]he two-step process and the factors ALJs consider when assessing the limiting effects of an individual's symptoms have not changed with the advent of SSR 16-3p." *Holder v. Comm'r of Soc. Sec.*, No. 1:17-CV-186-SKL, 2018 WL 4101507, at *10 n.5 (E.D. Tenn. Aug. 28, 2018).

The ALJ is still tasked with first determining whether there is an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2–3. Then, the ALJ is responsible for determining the intensity, persistence, and limiting effects of an individual's symptoms, including assessing their: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *4–8.

Here, with respect to Plaintiff's back, neck, and arm pain, the ALJ found that "x-ray and MRI studies on the lumber spine between 2009 and 2016 confirmed merely mild degenerative changes without nerve compromise or any significant stenosis or disc space narrowing." [Tr. 1418]. The ALJ also noted that "imaging studies . . . confirmed 'normal' elbows and only 'mild' or 'minimal' osteoarthritic changes in the hands/wrists and shoulders." [Tr. 1419]. Moreover, the ALJ noted that "[t]he record otherwise does not reflect any specialized treatment for these conditions since the alleged onset date through the date last insured." [*Id.*].

21

Additionally, the ALJ found that under SSR 16-3p, Plaintiff was more capable than alleged due to "numerous diagnostic imaging studies of record have confirmed no more than mild orthopedic findings without nerve compression or any significant stenosis," as well as that "EMG/NCV studies of record routinely ruled out radicular and neuropathic signs in the extremities." [Tr. 1421]. The ALJ detailed that Plaintiff was treated conservatively with hydrocodone, that his primary care providers "routinely observed the claimant with normal-to-mild findings and in no acute distress, despite the claimant's extreme reports of 9/10 and 10/19 pain during exams," and Plaintiff declined pain management referrals for injections. [*Id.*].

"Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight." *Getz v. Comm'r of Soc. Sec.*, No. CV 18-11625, 2019 WL 2710053, at *3–4 (E.D. Mich. June 10, 2019), *report and recommendation adopted by*, 2019 WL 2647260 (E.D. Mich. June 27, 2019) (citing *Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018)).

Plaintiff's arguments about his subjective allegations are within the ALJ's discretion. *See Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (recognizing that the Sixth Circuit holds the ALJ's credibility findings to be virtually "unchallengeable") (internal citations omitted). An ALJ's findings on credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Here, the Court finds that the ALJ appropriately reviewed the intensity, persistence and limiting effects of Plaintiff's symptoms pursuant to SSR 16-3p. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713–14 (6th Cir. 2012) ("As long as the ALJ cite[s] substantial, legitimate evidence to support his

factual conclusions, we are not to second-guess.").   Accordingly, the Court finds that the ALJ's finding that the objective record evidence did not support Plaintiff's claims of disabling limitations is supported by substantial evidence.  The ALJ was not required to adopt Plaintiff's testimony in full, and the ALJ appropriately detailed his reasoning for finding that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.

### D.   ALJ's Step Four Finding

Plaintiff maintains that the ALJ's finding that he could return to his past relevant work as a sales agent and insurance clerk is not supported by substantial evidence "as it does not include all of the uncontradicted impairments . . . particularly his difficulty in using his hands and emotional impairments." [Doc. 14 at 13].  Plaintiff points to Mr. Frantzen's opinion that he would have difficulty using his right arm and with his lungs, that he would have difficulty using his left hand for more than two hours a day, as well as that he would be limited to no more than part time work with a break every thirty minutes.  [*Id.*].  Plaintiff also repeats his arguments that the ALJ failed to find no mental impairments stemming from his depression.

During the hearing, the VE testified that an individual of Plaintiff's age, education, and work experience, who had limitations identical to those in Plaintiff's RFC, could perform Plaintiff's past work as a timeshare sales representative and as a medical reimbursement technician, both as actually performed and as generally performed.  [Tr. 1449].  In the disability decision, the ALJ found that Plaintiff was not disabled because he "was able to perform these positions as actually and generally performed."  [Tr. 1423].

At step five, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform given the claimant's RFC and vocational factors,

23

including age, education, and work skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Where the Commissioner relies upon VE testimony to demonstrate the existence of a substantial number of jobs that a claimant can perform, the VE must testify on the basis of the claimant's "residual functional capacity and . . . age, education, and work experience" in order to assess whether a claimant "can make an adjustment to other work." *See* 20 C.F.R. § 1520(a)(iv) & (v); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *see Stanley v. Sec'y of Health & Human Servs.,* 39 F.3d 115, 118–19 (6th Cir. 1994) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.").

Here, the Court has already detailed that the ALJ's assignment of little weight to Mr. Frantzen and Mr. Clark's opinions, as well as his finding that Plaintiff's depression was a nonsevere impairment, is supported by substantial evidence. *See, e.g., Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible.").

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*,

24

No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Additionally, Plaintiff contends that the ALJ failed to perform any "meaningful analysis of the fact that the insurance job at the [VA] was in fact a job for a disabled veteran." [Doc. 14 at 14]. However, if an individual can perform his past relevant work, either as he performed it, or as the work is performed in the national economy, the claimant is not disabled. *See* SSR 82-61: SSR 82-62. Therefore, a claimant will be "not disabled" at step four of the sequential evaluation if he is able to perform his past relevant work as he performed it or as that job is performed in the national economy. *Garcia v. Sec'y of HHS*, 46 F.3d 552, 556-57 (6th Cir. 1995) (citing SSR 82-61); *see, e.g.*, *Bentulan v. Berryhill*, No. 3:15-CV-381-HBG, 2017 WL 571502, at *3 (E.D. Tenn. Feb. 13, 2017). Moreover, Plaintiff fails to challenge the ALJ's finding that he could perform his past work as insurance clerk both actually and as generally performed.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

                                                    *Bruce Guyton*
                                                    United States Magistrate Judge